**Jeff STAM, Individually and as Representative of the Estate of Kyle Stam, Deceased, Appellant,**

**v.**

**Robert L. MACK, M.D., Appellee.**

No. 06–98–00042–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 15, 1998.

Decided Jan. 7, 1999.

---

Tom Needham, Needham, Johnson, Lovelace, Johnson, Dallas, for appellant.

Don W. Kent, Ken W. Good, Cowles & Thompson, Tyler, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

This is a medical malpractice suit. The trial court rendered a take-nothing judgment against Jeff Stam in his suit against Robert L. Mack, M.D. For the reasons stated hereafter, we affirm the judgment.

Kyle Stam, age eleven, suffered abdominal injuries and a laceration to his forehead when he was involved in an accident while riding a four-wheeler. Kyle's stepmother took him to the hospital emergency room for treatment. At the emergency room, Dr. Robert Patton treated Kyle and took an abdominal CT scan. Dr. Mack, a radiologist at Wadley Regional Medical Center, reviewed the CT scan and determined that it showed no abnormality. Kyle was discharged from the emergency room with instructions to see Dr. Billy Burns, his pediatrician. Dr. Burns had been told that Kyle's CT scan was interpreted as normal, but he testified that he did not rely on the CT scan in his treatment of Kyle. Three days after the accident, Kyle's symptoms worsened. He was taken to the hospital, where he died of a ruptured bowel during emergency surgery.

Jeff Stam, Kyle's father, brought suit against Dr. Burns and the hospital. Later, he added Dr. Mack and Dr. Patton as defendants. All defendants settled except Dr. Mack.

■ All of Stam's complaints on appeal attack evidentiary rulings of the trial court. The standard of review in determining whether a trial court erred in an evidentiary ruling is abuse of discretion. *Dalworth Trucking Co. v. Bulen,* 924 S.W.2d 728, 735 (Tex.App.-Texarkana 1996, no writ). To obtain a reversal of a judgment based on the admission of evidence, the appellant must show that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. TEX.R.APP. P.

44.1; *Dalworth Trucking Co. v. Bulen,* 924 S.W.2d at 736.

■ Stam first contends that the trial court erred by allowing evidence of the opinion of a radiologist, who was not present at the trial, through the testimony of a testifying expert. Dr. Mack called Dr. Franklin Harberg, a designated pediatric expert, to testify about Kyle's bowel rupture. All parties conceded that Dr. Harberg was a highly qualified expert in pediatrics. Dr. Harberg testified that he routinely was required to review abdominal CT scans in his practice, but because he was not trained as an expert in radiology, he frequently consulted radiology experts to give him their opinions on CT scans. Dr. Harberg stated that, before he formed his opinion of the extent of Kyle's injury, he had Dr. Milton Wagner look at the CT scan so he could get his opinion on it, and that Dr. Wagner said he thought the CT scan showed no abnormality. Dr. Wagner is the senior radiologist at Texas Children's Hospital in Houston. Stam objected to this portion of Dr. Harberg's testimony as hearsay, and the trial court overruled his objection.

Stam concedes that Dr. Harberg could properly give his opinion on the pediatric care Kyle received, but he argues that he should not have been allowed to relate Dr. Wagner's opinion of the CT scan simply because it formed part of the underlying data on which he relied. Dr. Mack contends that TEX.R. EVID. 703 and 705 allowed Dr. Harberg to give such testimony.

At the time of trial, the Texas Rules of Civil Evidence were in effect.[1] Rule 703 stated that the facts or data upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before trial, and if the facts or data are of a type reasonably relied upon, they need not be admissible in evidence. TEX.R. CIV. EVID. 703. Rule 705 stated that an expert may testify in terms of opinion or inference, and may give his reasons without prior disclosure of the underlying facts or data. TEX.R. CIV. EVID. 705. That rule now provides that the expert may in any event disclose on direct examination, or may be re-

---

1. These rules were made a part of the new Texas Rules of Evidence effective March 1, 1998.

quired to disclose on cross-examination, the underlying facts or data on which he relied in reaching his opinion. Tex.R. Evid. 705.[2]

■ Although there is some disagreement among the authorities concerning the extent of Evidence Rules 703 and 705, we believe the correct view is that those rules, as amended, now allow a testifying expert to relate on direct examination the reasonably reliable facts and data on which he relied in forming his opinion, subject to an objection under Tex.R. Evid. 403[3] that the probative value of such facts and data is outweighed by the risk of undue prejudice. *Sosa ex rel. Grant v. Koshy,* 961 S.W.2d 420 (Tex.App.-Houston [1st Dist.] 1997, writ denied). The trial court, in the exercise of its sound discretion, may exclude evidence of those facts and data if, for any reason, those facts and data are more prejudicial than probative. The details of those facts and data may be brought out on cross-examination pursuant to Tex.R. Evid. 705(a), 705(b), and 705(d). *See Boswell v. Brazos Elec. Power Coop., Inc.,* 910 S.W.2d 593, 602 (Tex.App.-Fort Worth, 1995, writ denied); *First Southwest Lloyds Ins. Co. v. MacDowell,* 769 S.W.2d 954, 957–58 (Tex.App.-Texarkana 1989, writ denied). Moreover, the opponent of such evidence may ask for a limiting instruction if he fears the evidence may be used for a purpose other than support for the testifying expert's opinion. Tex.R. Evid. 705(d); *see also* Tex.R. Evid. 105.

■ The evidence of Dr. Wagner's underlying opinion was admissible because Dr. Harberg testified that he relied on Dr. Wagner's opinion in forming his own opinion. The trial court was not required to make a formal balancing test under Tex.R. Evid. 403 because Stam did not make a Rule 403 objection.

■ Stam argues that Dr. Harberg should not have been allowed to give Dr. Wagner's opinion because the subject of Dr. Wagner's opinion was outside Dr. Harberg's expertise. We disagree. Dr. Harberg, although conceding that he was not a radiologist, testified that in his expertise of pediatrics, he was routinely required to review and evaluate abdominal CT scans of children, and that he used that review to help him form opinions as to diagnoses and treatment. We conclude that Dr. Harberg's field of expertise included the evaluations of pediatric abdominal CT scans. Moreover, if an opinion of a consulting expert on which a testifying expert relies is outside the expertise of the testifying expert, the trial court may consider that fact, along with other pertinent facts, in determining whether the opinion should be excluded because of the possibility of being used for an improper purpose, or because it renders the opinion less probative and more prejudicial under Rule 705(d).

■ Stam also contends that Dr. Mack failed to properly disclose Dr. Wagner in

---

2. Effective March 1, 1998, Rule 705 was amended and made a part of the Texas Rules of Evidence. The rule now reads as follows:

   (a) **Disclosure of Facts or Data.** The expert may testify in terms of opinion or inference and give the expert's reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data.

   (b) **Voir dire.** Prior to the expert giving the expert's opinion or disclosing the underlying facts or data, a party against whom the opinion is offered upon request in a criminal case shall, or in a civil case may, be permitted to conduct a *voir dire* examination directed to the underlying facts or data upon which the opinion is based. This examination shall be conducted out of the hearing of the jury.

   (c) **Admissibility of Opinion.** If the court determines that the underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702 or 703, the opinion is inadmissible.

   (d) **Balancing Test; Limiting Instructions.** When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

3. Tex.R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

discovery. He asserts that Dr. Mack did not list Dr. Wagner as a person with knowledge of relevant facts, list him as a testifying expert, or reveal his opinions or mental impressions. If Dr. Mack failed to properly disclose Dr. Wagner, it would have required the exclusion of any testimony regarding his opinion. Dr. Mack argues that he properly supplemented his responses to Stam's interrogatories to include Dr. Wagner's opinion and that he listed him as a consulting expert.

The identity and location of expert witnesses, the subject matter of their expertise, and the facts known to them are only discoverable if they are expected to testify or if their opinions or impressions have been reviewed by an expert who will testify. Tex.R. Civ. P. 166b(3)(b); *Hardesty v. Douglas,* 894 S.W.2d 548, 550 (Tex.App.-Waco 1995, orig. proceeding). The identity of these witnesses must be disclosed no later than thirty days before the beginning of trial. Tex.R. Civ. P. 166b(6)(b); *E.F. Hutton & Co., Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987).

We find that Dr. Mack properly disclosed Dr. Wagner and his opinion about the CT scan. Dr. Mack listed the identity and location of Dr. Wagner in a supplemental response to Stam's interrogatory regarding consulting experts. Dr. Mack supplemented his responses thirty-one days before trial. Dr. Mack was not required to list Dr. Wagner as a person with knowledge of relevant facts or as a testifying expert. Dr. Harberg stated that he showed the CT scan to Dr. Wagner without going into any factual details of Kyle Stam's accident or treatment. The record does not indicate that Dr. Wagner had any knowledge of relevant facts. Thus, under Rule 166b of the Texas Rules of Civil Procedure, Dr. Mack was not required to identify Dr. Wagner as a fact witness. Tex.R. Civ. P. 166b(2)(d). Also, Dr. Mack was not required to identify Dr. Wagner as a testifying expert. Tex.R. Civ. P. 166b(2)(e); *Hardesty v. Douglas,* 894 S.W.2d at 550. He did not call, nor did he intend to call, Dr. Wagner as a testifying expert. Finally, although Dr. Mack's disclosure of Dr. Wagner's opinion was not particularly detailed, we hold that Stam received sufficient notice under the circumstances. *See Caterpillar,*

*Inc. v. Shears,* 881 S.W.2d 923, 929 (Tex. App.-Corpus Christi 1994), *rev'd on other grounds,* 911 S.W.2d 379 (Tex.1995). Dr. Mack's supplemental response stated that Dr. Harberg asked Dr. Wagner to review the CT scan to see whether he saw anything abnormal, and Dr. Wagner reviewed the scan and did not find anything significant. Stam also took Dr. Harberg's deposition before trial and questioned Dr. Harberg about Dr. Wagner's opinion. The record does not indicate that Dr. Mack attempted to conceal the opinion of Dr. Wagner. We conclude that the trial court did not err by allowing the testimony of Dr. Wagner's opinion.

■ Stam also complains because he was precluded from impeaching Dr. Mack's radiology expert, Dr. Philip Clifford. During cross-examination, Stam sought to impeach Dr. Clifford because of a past professional relationship in which Dr. Mack's attorney represented Dr. Clifford in a medical malpractice action. The trial court, sua sponte, interrupted Stam's cross-examination of Dr. Clifford and asked the attorneys to approach the bench. After a short bench conference, the trial court ruled that Stam could not specifically ask Dr. Clifford about the past lawsuit because of the "amount of prejudice that might come from inferences from that would far outweigh any admissible aspects of it." Stam made a bill of exception concerning Dr. Clifford's relationship with Dr. Mack's attorney.

It has been held that evidence that a defense expert was represented by defense counsel in a past malpractice lawsuit is inadmissible for impeachment purposes. *See Watson v. Isern,* 782 S.W.2d 546, 549 (Tex. App.-Beaumont 1989, writ denied); *cf. Harvey v. Stanley,* 803 S.W.2d 721, 724 (Tex. App.-Fort Worth 1990, writ denied). We conclude that the trial court here did not err in its ruling in this regard.

■ Even if the trial court erred by excluding the impeachment evidence, the error was not harmful. *American Cyanamid Co. v. Frankson,* 732 S.W.2d 648, 654 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.). The trial court refused to let Stam directly ask Dr. Clifford if Dr. Mack's attorney had represented him in a medical malpractice law-

suit, but it did allow Stam to prove by Dr. Clifford that he and Dr. Mack's attorney did have a professional relationship ten years ago and that Dr. Mack's attorney predominately represents doctors in medical negligence cases. Thus, although Stam was unable to directly ask Dr. Clifford about his past lawsuit, he was able to put the issue of bias before the jury.

Stam also contends the trial court erred by sua sponte stopping his cross-examination of Dr. Clifford. The trial court may properly intervene in the proceeding to maintain control and promote the expedition of a trial. *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Rule 611(a) of the Texas Rules of Evidence provides that a trial court shall exercise reasonable control over the interrogation of witnesses in order to make the interrogation effective for the ascertainment of the truth and to avoid needless consumption of time. Tex.R. Evid. 611(a).

We conclude that the trial court did not err by sua sponte interrupting Stam's cross-examination of Dr. Clifford. The trial court interrupted Stam's cross-examination because it felt that Stam was questioning the witness on immaterial issues and he was going into areas that were improper. The trial court's interruption of the cross-examination was not improper, but was a proper action to maintain control and promote expedition.

Finally, Stam contends that the trial court erred by excluding evidence that Dr. Patton and Dr. Burns, who treated Kyle Stam, settled the actions against them. Before voir dire, Dr. Mack filed a motion in limine to prevent the introduction of any evidence of settlement agreements between Stam and the other defendants. The trial court granted the motion in limine and excluded evidence of the settlement agreements at trial. Stam argues that the settlements were admissible because without them the jury was in the position of being asked to find persons negligent who were not represented by counsel at trial. In that situation, Stam contends, the jury would be forced to speculate why Stam was seeking damages only against Dr. Mack instead of all the doctors who treated Kyle Stam.

Rule 408 of the Texas Rules of Civil Evidence provides that evidence of settlement agreements is not admissible to prove liability. Tex.R. Civ. Evid. 408. Settlement agreements may be admissible, however, if offered for other purposes, such as proving bias or prejudice. *Id.* One kind of settlement agreement that is admissible is a "Mary Carter" agreement. *C & H Nationwide, Inc. v. Thompson*, 810 S.W.2d 259, 269 (Tex.App.-Houston [1st Dist.] 1991), *rev'd on other grounds*, 903 S.W.2d 315 (Tex.1994). In a "Mary Carter" agreement, a co-defendant settles with the plaintiff and obtains a financial stake in the plaintiff's recovery. *Id.* These agreements are admissible to show the true alignment of the parties. *Id.* On the other hand, settlement agreements that do not give the settling defendants a financial stake in the plaintiff's recovery or do not create a misalignment of parties are inadmissible. *Id.; Singleton v. Crown Cent. Petroleum Corp.*, 713 S.W.2d 115, 122–23 (Tex.App.-Houston [1st Dist.] 1985), *rev'd on other grounds*, 729 S.W.2d 690 (Tex.1987).

The crux of Stam's argument, at trial and in his brief, is that the settlement agreements should have been admitted because the settling defendants maintained they were not negligent, even after settling for significant sums. Thus, Stam offered the settlement agreements for the purpose of proving liability on the part of the settling defendants, which Rule 408 prohibits. Stam's argument that the agreements proved the bias and shifting interests of the settling defendants is without merit. Stam has not produced any evidence of bias or shifting interest. Dr. Patton, Dr. Burns, and the hospital, before and after their settlements, all contended that they were not negligent.

For the reasons stated above, we affirm the judgment of the trial court.