In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00598-CV

_____


IN RE COMMITMENT OF ROLANDO ORTIZ ROMO

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-02-02073 CV

**MEMORANDUM OPINION**

Rolando Ortiz Romo appeals from an order of commitment, which the trial court rendered after a jury found Romo to be a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (SVP statute). Romo's appeal asserts the trial court erred by denying his motion to transfer venue, abused its discretion by limiting his examination of the experts who testified at trial, and denied his due process rights by exhibiting bias in favor of the State. We affirm the trial court's judgment.

1

## The Statute

Under the SVP statute, the State bears the burden of proving beyond a reasonable doubt that the person it seeks to commit for treatment is a sexually violent predator. *Id.* § 841.062 (West 2010). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West 2010). The term "'[b]ehavioral abnormality'" is defined by the SVP statute as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2012). In *In re Commitment of Almaguer*, we explained that "[a] condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

Transfer of Venue

In issue one, Romo challenges the trial court's denial of his motion to transfer venue to Hidalgo County or other suitable location. In his motion, Romo argued that transferring his case to Hidalgo County would place the trial within the jurisdiction of a court that had the power to compel witnesses, through the use of subpoenas, to attend his trial. *See* Tex. R. Civ. P. 176.3(a) (providing that a person may not be required to appear in a county that is more than 150 miles from where the person resides or is served); Tex. Civ. Prac. & Rem. Code Ann. § 22.002 (West 2008) (subjecting a person who lives within 150 miles of the county where the suit is pending to being "subpoenaed in the suit").

Nevertheless, while Romo's discovery responses disclose over forty persons with knowledge of relevant facts, his motion to transfer does not identify any specific witness that he desired to subpoena. Additionally, the record does not demonstrate that Romo attempted to call any witnesses who refused to attend his trial, that he sought to take depositions of witnesses residing beyond the court's subpoena range, or that he offered a bill of proof to demonstrate why the testimony of the individual witnesses listed in his response to the State's request for disclosure was material to the dispute.

On appeal, Romo argues that because the State failed to object to his motion for change of venue, a transfer of venue to Hidalgo County was mandatory under Texas Rule of Civil Procedure 258. *See* Tex. R. Civ. P. 258. The record shows Romo's motion was not supported by a single affidavit, much less affidavits demonstrating the trial court had sufficient cause to justify granting his motion. *See* Tex. R. Civ. P. 257 (providing that motion for change of venue may be granted if supported by party's own affidavit and the affidavits of at least three credible persons demonstrating that the party cannot obtain a fair and impartial trial).

"A trial court can deny the motion to transfer if the movant does not comply with Rule 257." *In re E. Tex. Med. Ctr. Athens*, 154 S.W.3d 933, 935 (Tex. App.—Tyler 2005, orig. proceeding). Because Romo's motion to transfer did not comply with Rule 257, the trial court acted properly by denying it. We overrule issue one.

## Constitutional Claims

In issue two, Romo complains the trial court impermissibly limited his right to cross-examine the State's expert, Dr. David Self, which he argues violated the confrontation clauses of the federal and state constitutions and denied him due process. We disagree with Romo that the trial court erred.

The Sixth Amendment Confrontation Clause and Article I, Section 10 of the Texas Constitution apply only "[i]n all criminal prosecutions[.]" U.S. CONST.

4

amend. VI; Tex. Const. art. I, § 10. Additionally, this Court has declined to apply the Confrontation Clause to civil proceedings. *In re Commitment of Polk*, 187 S.W.3d 550, 555-56 (Tex. App.—Beaumont 2006, no pet.). The record reflects that Dr. Self appeared and that Romo's attorney cross-examined him. Accordingly, Romo's complaints relating to confrontation and to his suggestion that he was deprived of due process because he was not allowed to ask all of the questions he wanted to ask Dr. Self during Dr. Self's cross-examination are overruled.

Romo further argues that the trial court acted improperly in prohibiting him from posing certain questions to Dr. Self, as well as his own expert, Dr. John Tennison, regarding Supreme Court case-law holding that a record must show that a sexually violent predator has a "'serious difficulty controlling behavior.'" According to Romo, by limiting his examination of the experts, the trial court denied him his rights to due process and a fair trial. *See* Tex. Const. Art. I, § 15 (Right of Trial by Jury).

The jury's determination that Romo is a sexually violent predator relies upon the opinion testimony of the expert witnesses; therefore, questions about the general accuracy of the experts' opinions are relevant inquiries. *See* Tex. R. Evid. 401 (defining relevant as evidence having any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence).

5

Generally, "[a] witness may be cross-examined on any matter relevant to any issue in the case[.]" Tex. R. Evid. 611(b). However, the trial court may exercise reasonable control over the interrogation of witnesses to make the interrogation effective for the factfinder to determine the truth. *See* Tex. R. Evid. 611(a). Also, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Tex. R. Evid. 403.

Romo argues that the trial court refused to allow his counsel to question the experts about requirements found in case law. The record shows that in response to Romo's counsel's repeated questions to the experts concerning "serious difficulty controlling behavior," the trial court instructed Romo's counsel to use the Texas statutory definitions for the terms as submitted in the issues to avoid confusing the jury.

The Texas statutory definitions of "sexually violent predator" and "'[b]ehavioral abnormality'" do not specifically include the phrase "serious difficulty controlling behavior." *See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a). Consequently, the phrase "serious difficulty controlling behavior" does not appear in the charge the trial court submitted to the jury. Nevertheless, we have stated that whether a defendant has a serious difficulty in

6

controlling his behavior is a matter that is implicitly included in the statutory definition of the term "'[b]ehavioral abnormality.'" *See Almaguer*, 117 S.W.3d at 506. Therefore, Romo's counsel's effort to pose questions on matters regarding the meaning of the word "behavioral abnormality" were not improper, even though the questions could have been phrased differently.

Nevertheless, the trial court could have viewed an attempt to introduce concepts from case law using terms that differ from the language used in the applicable statutes governing the issues before the jury to have possessed the potential for confusing the factfinder. While Romo argues that the trial court's rulings regarding his questioning of Dr. Self limited his ability to examine the basis and credibility of Dr. Self's opinion, Romo's offer of proof does not persuade us that the information Romo sought to develop before the jury was significant to Dr. Self's opinions about whether Romo has a behavioral abnormality and is likely to reoffend.

"A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753-54 (Tex. 1995). Dr. Self fully explained the basis for his opinion that Romo has a behavioral abnormality that makes him likely to commit a predatory act of sexual

7

violence. Considering Romo's counsel's extensive cross-examination of Dr. Self concerning his opinions, and the discretion allowed trial courts to control the testimony to avoid confusing the jury, we conclude the trial court did not abuse its discretion by not allowing Romo's counsel to pose the questions at issue.

Romo also complains that the trial court limited his counsel's ability to question his own expert, Dr. Tennison, regarding whether Romo had "serious difficulty controlling his behavior." Nevertheless, our review of the record shows that the trial court allowed Romo's counsel to question Dr. Tennison concerning the matter. Dr. Tennison fully explained the basis for his opinion that Romo does not have a behavioral abnormality. Moreover, we are not persuaded by Romo's offer of proof that the information Romo sought to develop before the jury was significant to Dr. Tennison's opinion. Although the trial court did not allow Romo's counsel to pose questions the trial court considered as having the potential to confuse the jury, the limitation did not impermissibly restrict Romo's examination of Dr. Tennison.

Romo also argues the trial court exhibited a "deep-seated favoritism" to the State when he questioned the experts, denying his right to receive a fair trial. According to Romo, the trial court's comments and actions displayed favoritism toward the State. According to Romo, the trial court's ruling and its comments

showed the court was biased for the State. Obviously, judges "should be fair and impartial and not act as an advocate for any party[]" or as "any party's adversary." *See e.g. Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied). "The judge is responsible for the general conduct and management of the trial." *Id.*

Nonetheless, "a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). And, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion[,]" and opinions the judge forms during a trial do not necessitate recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* Further, "[n]ot establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger[.]" *Id.* at 555-56.

Romo did not object to the trial court's comments during trial that he now complains about on appeal. "An 'objection to a trial court's alleged improper

conduct or comment must be made when it occurs if a party is to preserve error for appellate review, unless the conduct or comment cannot be rendered harmless by proper instruction.'" *In re Commitment of Vanzandt*, 156 S.W.3d 671, 674 (Tex. App.—Beaumont 2005, no pet.) (quoting *Francis*, 46 S.W.3d at 241). Romo also does not explain how the trial court's actions and comments were incurable. Our review of the trial court's rulings and statements reflect that Romo's complaints could have been addressed during trial had Romo objected or requested instructions asking the jury to disregard the comments that are now at issue. *See id.* We overrule issue two. Having overruled both of Romo's issues, we affirm the judgment rendered by the trial court.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 18, 2013
Opinion Delivered October 31, 2013
Before McKeithen, C.J., Gaultney and Horton, JJ.